**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 31, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

—————————————

No. 02-41357

—————————————

DP SOLUTIONS, INC.,

Plaintiff - Counter Defendant -
Apellee-Cross-Appellant,

versus

ROLLINS, INC.; ET AL,

Defendants,

ROLLINS, INC.,

Defendant - Counter Claimant -
Appellant-Cross-Appellee.

—————————————————————————————————————————————————

Appeals from the United States District Court
for the Eastern District of Texas

—————————————————————————————————————————————————

Before JOLLY, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Rollins, Inc. appeals from a jury verdict in favor of DP Solutions, Inc. ("DPS") awarding DPS

damages for breach of contract and tortious interference with contract. Rollins originally hired DPS

to develop a new computer system. In July 1998 the parties signed the Professional Services

Agreement, the contract governing the overall relationship between the parties. This contract provided that the parties would sign engagement agreements at a later date to govern the actual work that Rollins wanted DPS to perform. The first phase of the agreement was for DPS to assess Rollins' business and determine what capabilities Rollins needed in a new computer system.

After this initial analysis phase, in October 1998, Rollins engaged DPS to actually develop the new computer system. Rollins chose not to enter into a fixed price engagement agreement where specifications for the new system would be determined before development began. Instead, Rollins chose to retain more control over the development phase, and signed an engagement agreement where it would pay DPS a monthly fee in exchange for the provision of personnel proficient in the use of a specific software writing tool. The development of the new system proved more complex than the parties originally anticipated, and therefore took longer to complete. The parties signed the final engagement agreement in June 2000. This agreement named the personnel DPS would provide and the specific fee for each remaining month in 2000. The parties deviated from this written engagement agreement, and the personnel DPS provided along with the monthly rate it charged remained at the July 2000 level for the rest of that year.

In the months leading up to December 2000, Rollins fell behind in its payments to DPS. DPS contacted Rollins concerning these past due payments. On Friday, December 15, 2000, Rollins informed DPS that Rollins would make no further payments, but that Rollins expected DPS to complete the development of the system. The parties agree that Rollins had paid around seven million dollars in fees and expenses to DPS up to that point for the computer system, which was still incomplete. In response to Rollins's refusal to pay its bills, DPS removed its personnel from the project site on Monday, December 18, 2000. DPS performed no additional work on the project after

-2-

that date. DPS then filed the original complaint in this lawsuit in federal district court based upon diversity jurisdiction.

After January 18, 2001, Rollins discussed employment opportunities with two former DPS employees who had worked on the development project. DPS spent approximately $29,300 in attorneys' fees to prevent these employees from working for Rollins in violation of the employees' non-compete agreements with DPS. DPS then amended its complaint to include a tortious interference claim against Rollins. Rollins' response to the amended complaint claimed that DPS breached the contract, that DPS committed fraud on Rollins, that DPS's performance under the contract was so deficient that it excused Rollins from further performance, and that Rollins was privileged to interfere with DPS's relationship with its former employees. This case was eventually tried before a jury.

The jury found that Rollins breached its contract with DPS and awarded DPS $486,000 in damages for the months of November and December 2000. The jury also found that Rollins failed to comply with the thirty-day notice requirement for termination included in the contract, and awarded DPS $243,000 in damages for the month of January 2001. The jury awarded DPS $27,000 in damages for Rollins' tortious interference with DPS's non-compete agreements. The jury found that DPS did not breach the contract and that DPS did not commit fraud. Finally, the jury found that DPS's performance under the contract did not excuse Rollins from its performance, and that Rollins was not justified in interfering with DPS's non-compete agreements with its former employees. The jury awarded no damages to Rollins.

After the verdict, Rollins renewed its motion for judgment as a matter of law pursuant to FED. R. CIV. P. 50(b) regarding DPS's breach of contract and tortious interference claims. Rollins also

filed a motion for a new trial under FED. R. CIV. P. 59 alleging the closing argument by DPS was prejudicial and invalidated the jury award. The district court denied both motions. The district judge then awarded DPS $337,073 in attorneys' fees under state law and $9,775.03 in costs, as well as pre-judgment interest at ten percent and post-judgment interest at 1.75 percent. This appeal followed.

On appeal, Rollins raises eight claims. These claims break down as follows: four claims concern the sufficiency of the evidence supporting the jury's breach of contract damages award; one claim regarding the tortious interference damage award; one claim that DPS's closing argument was prejudicial; a claim that the attorneys' fee award to DPS was improper; and a claim that the award of costs to DPS was improper. DPS raises four additional claims on cross-appeal. These claims concern the district court's interpretation of the pre-trial order; the prejudgment and postjudgment interest rates awarded by the district court; the award of attorneys' fees to DPS for this appeal; and the district court's modification of DPS's attorneys' fee award to account for the jury's award to DPS for tortious interference damages.

I

Rollins raises four issues regarding the sufficiency of the evidence supporting the breach of contract damages: 1) the documents governing the parties' relationship terminated by their own terms on December 31, 2000; 2) the thirty-day notice period included in the contract was discretionary rather than mandatory; 3) the judgment includes an award that exceeds the proper amount for a thirty-day notice of cancellation provision; and 4) DPS failed to present legally sufficient evidence regarding the proper measure for the breach of contract damages. Rollins claims the proper damage measure for a breach of contract is net damages and that DPS failed to present evidence of expenses it avoided.

We review the denial of a motion for judgment as a matter of law *de novo*, using the same standard the district court used. *Ford v. Cimarron*, 230 F.3d 828, 830 (5th Cir. 2000). "Judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue.'" *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997) (quoting FED. R. CIV P. 50(a)). When evaluating the denial of Rollins' motion for judgment as a matter of law, we must consider all the evidence in the light most favorable to DPS, drawing all factual inferences in favor of DPS, while "leaving credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts to the jury." *Foreman*, 117 F.3d at 804 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253-55, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). However, a "mere scintilla of evidence is insufficient to present a question for the jury" and "there must be a conflict in substantial evidence to create a jury question." *Foreman*, 117 F.3d at 804 (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc)). Federal courts apply state substantive law in diversity jurisdiction cases, but apply federal procedural law. *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003).

Rollins claims that the contract terminated by its own terms on December 31, 2000. However, the evidence supported a finding that DPS and Rollins departed from the written terms of the June 2000 engagement agreement. Rollins requested, and DPS agreed, to continue the project staffing levels at the July 2000 level rather than decreasing them as provided in the agreement. The parties also agreed to maintain the monthly fee at the July 2000 level rather than decreasing it according to the schedule included in the June 2000 agreement. DPS presented testimony that Rollins agreed to extend the duration of the contract at the ongoing monthly rate into January 2001. The jury

could infer support for this testimony from a voicemail DPS received from Rollins prior to December 18 where Rollins arguably assumed the relationship would continue into January. This is more than "a scintilla of evidence," and with all factual inferences drawn in favor of DPS, the testimony is sufficient to support the jury's determination that Rollins extended its contract with DPS into January 2001. Thus, Rollins' first claim fails.

Next, Rollins claims the jury finding that Rollins violated the thirty-day notice provision in the contract was improper because this notice period was a discretionary means for terminating the contract. The language of the original contract between the parties supports the jury finding that Rollins violated the notice period.[1] Rollins contends that the contract language "may terminate . . . by providing 30 days [] notice" means it is discretionary whether notice is given at all. However, another reasonable inference, supporting the jury's findings, is that Rollins has the discretion to terminate the contract, but once Rollins chooses to terminate, it must give thirty days' notice. When reviewing a judgment as a matter of law, we must allow the jury to make reasonable inferences. *See Foreman*, 117 F.3d at 804. Thus, the jury finding that Rollins violated the thirty-day notice period is supported by the evidence, and Rollins' second issue concerning the breach of contract claim fails.

Rollins' third claim on appeal regarding the breach of contract damages is that the meeting between Rollins and DPS on Friday, December 15, 2000 was sufficient to trigger the start of the notice period, and that any damages awarded for the period after January 14, 2001 are not supported by legally sufficient evidence. However, the jury found that Rollins breached the contract on or about December 18, 2000. Both parties stipulated that DPS removed its employees from the Rollins project

---

[1]Paragraph 6 of the Professional Services Agreement between Rollins and DPS provides: "[Rollins] may terminate this AGREEMENT or any Engagement Agreement by providing 30 days written notice . . . of termination."

on Monday, December 18, 2000 and provided no further services to Rollins after that date. In light of this jury finding and the stipulated evidence, we must conclude that DPS received notice of contract termination from Rollins no later than December 18, 2000. Because notice was received by December 18, 2000, any jury damages for breach of contract after the expiration of the thirty-day notice period on January 17, 2001 are not supported by legally sufficient evidence. The portion of the jury damages award relating to the period from January 18 until January 31, 2001 should, therefore, be vacated.

Finally, Rollins claims that the jury damage awards are unsupported by legally sufficient evidence. State substantive law governs the measure of damages in this breach of contract diversity case. *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 601-02 (5th Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79, 585 S. Ct. 817, 82 L. Ed. 1118 (1938)). Neither party disputes that Texas state substantive law governs this contractual relationship. Under Texas law, the proper damages award for a breach of contract is the amount necessary to put the party in "the same economic position in which it would have been had the contract not been breached." *CDB Software, Inc. v. Kroll*, 992 S.W.2d 31, 37 (Tex. App.) ) Houston [1st Dist.], 1998 pet. denied). Generally, the measure of damages meeting this standard is net profit. Specifically, the gross amount the non-breaching party would have received if the contract had been fulfilled should normally be reduced by any unpaid costs the non-breaching party would have to incur to complete performance of the contract. *See Farris v. Smith Erectors, Inc.*, 516 S.W.2d 281, 283-84 (Tex. Civ. App.) ) Houston [1st Dist.] 1974, no writ) (holding that a construction contractor is entitled to recover profits upon breach of a partially performed contract, but not the same amount as if the contract were completed because that amount must be reduced by the cost of completion); *V.R. Wattinger Co. v. C.W. Moore*,

475 S.W.2d 327, 329 (Tex. Civ. App.) ) Austin 1972, no writ) (holding that one method of computing damages for a breach of contract is "the contract price less the reasonable cost of completion"). The burden is on the plaintiff to provide evidence of any costs avoided to allow the jury to properly calculate net damages. *See Farris*, 516 S.W.2d at 283-84. However, this general rule does not apply in situations where the breach of contract occurs in such a manner that the non-breaching party does not have the opportunity to reduce its expenses. *See Houston Chronicle Publ'g Co. v. McNair Trucklease, Inc.*, 519 S.W.2d 924, 932 (Tex. Civ. App.) ) Houston [1st Dist.] 1975, writ ref'd n.r.e.) (holding that if the defendant's breach does not permit the plaintiff to reduce its overhead then defendant is not entitled to a reduction in the damages awarded against it).

We must analyze the jury award for the breach of contract claim in three distinct time periods to determine whether the evidence is legally sufficient: 1) the damages awarded for November 2000 and the portion of December prior to the removal of DPS personnel from the Rollins project on December 18, 2000; 2) the thirty-day period from December 18, 2000 until January 17, 2001; and 3) the award for the period from January 18, 2001 through the end of that month. With regard to the first time period, both parties agree that DPS provided services under the Rollins contract until December 18, 2000. DPS bore its full costs of performance during this time frame, and therefore full payment is necessary for DPS to be in the same economic position as it would be absent the breach. *See CDB Software*, 992 S.W.2d at 37. The jury award of the gross contract amount for this time period is proper.

Rollins claims the evidence supporting the damage award for the period after December 18, 2000 is not legally sufficient. Rollins argues DPS did not fulfill its burden to provide evidence of the costs that DPS was able to avoid during this period, thus preventing the jury from determining the

-8-

net profit lost by DPS as a result of the breach. *See Farris*, 516 S.W.2d at 283-84 (burden is on non-breaching party to provide evidence from which net profits can be calculated). For the period from December 18, 2000 until January 17, 2001, there is sufficient evidence in the record to support the jury award of damages to DPS. The jury could reasonably find that DPS was unable to avoid any of its expenses during this thirty-day period. When the non-breaching party cannot avoid its expenses, the general damages rule does not apply and an award of gross profit and not net profit is appropriate. *Houston Chronicle*, 519 S.W.2d at 932.

The jury's gross profit award was appropriate because the contract itself supports a jury inference that Rollins was required to reimburse all expenses incurred by DPS on the project. Paragraph 1 of the Professional Services Agreement provides: "[Rollins] will be provided a detailed invoice for services and *expenses* in providing services under this agreement." (emphasis added). In addition, DPS presented actual invoices requesting reimbursement of its expenses from Rollins. Finally, the jury heard testimony that the only expense DPS bore without reimbursement was the salary cost of its employees. This testimony also described the thirty-day notice period included in DPS's contracts with its employees and that DPS honored these clauses. Therefore, the jury could reasonably conclude based on the evidence that DPS was unable to avoid any of its costs during the thirty-day notice period. Thus, the jury award for the gross monthly fee for the period from December 18, 2000 until January 17, 2001 is proper.

Rollins elicited testimony that DPS was able to avoid paying salaries to its employees after January 17. As discussed above, the thirty-day notice period expired on January 17 terminating the contract, thus we need not address Rollins' claim regarding the evidence of costs that DPS avoided from January 18 through January 31, 2001. Rollins' claims regarding the impropriety of a gross

rather than a net damage award fails for the period from November 2000 until December 18, 2000. This claim also fails for the thirty-day notice period ending January 17, 2000, and is moot for the portion of January outside the notice period.

II

Rollins' fifth claim is that it is entitled to judgment as a matter of law with regard to the jury's award for tortious interference. To prove tortious interference a party must show an existing contract subject to interference, the interference was willful or intentional, the interference was the proximate cause of the damage, and actual damage or loss resulted from the interference. *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995). Rollins challenges the jury award on two grounds. First, Rollins claims the contact with the DPS employees occurred after they had left the employ of DPS. However, the evidence established that these employees still had non-compete agreements with DPS, therefore the jury could find there was an existing contract subject to interference.

Second, Rollins argues that DPS did not prove any actual damages. The only evidence the trial court submitted to the jury supporting the damage award for tortious interference was the attorneys' fees DPS incurred to prevent its former employees from working for Rollins. Rollins argues that attorneys' fees are legally insufficient to show actual damages because Texas law does not permit a party prevailing on a claim of tortious interference to recover attorneys' fees. *See Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 234 (5th Cir. 1986) (discussing Texas rule prohibiting recovery of attorneys' fees in tortious interference suits). Although *Jefferson Investment* represents the general Texas rule that attorneys' fees are not damages for purposes of tortious interference, a number of the Texas courts of appeals have adopted equitable exceptions to this general rule. *See Martin-Simon v. Womack*, 68 S.W.3d 793, 798 n.2 (Tex.

-10-

App.)) Houston [14th Dist.] 2001, pet. denied) (listing examples of circuits adopting equitable exceptions to the general rule of non-recovery of attorneys' fees in tort cases).

When the highest state court is silent on an issue we must make an *Erie* guess. *McAvey* v. *Lee*, 260 F.3d 359, 365 n.3 (5th Cir. 2001). "We must conscientiously determine how that court would decide the issue before us, looking to the sources of law)) including the intermediate appellate court decisions of that state)) that the highest state court would look to for persuasive authority." *Id.* One of the equitable exceptions to the general rule on attorneys' fees adopted by a Texas court of appeals allows recovery of attorneys' fees in tortious interference cases. *See Texas Beef Cattle Co. v. Green*, 883 S.W.2d 415, 430 (Tex. App.)) Beaumont 1994) *rev'd on other grounds*, 921 S.W.2d 203 (Tex. 1996); *Martin-Simon*, 68 S.W.3d at 798 n.2 (including the *Texas Beef Cattle* allowance of recovery of attorneys' fees in tortious interference cases in its list of equitable exceptions). We hold that *Texas Beef Cattle* is the appropriate Texas precedent to apply in this diversity case. *Texas Beef Cattle* held "that necessary and reasonable attorneys' fees and costs even though expended and incurred in previous litigation can be recovered as proper damages in a later suit based on tortious interference of contract." *Texas Beef Cattle*, 883 S.W.2d at 430. This exception is limited to situations "where the natural and proximate results and consequences of prior wrongful acts had been to involve a plaintiff . . . in litigation with and against third parties and other parties." *Id.* DPS presented evidence regarding the attorneys' fees it incurred to enforce its underlying non-compete agreements with two former employees resulting from Rollins' contact with these employees. The evidence supports the jury's finding of tortious interference, and under *Texas Beef Cattle*, the attorneys' fees from the previous litigation can be recovered as damages. Rollins is not entitled to judgment as a matter of law on the tortious interference award.

III

Rollins' sixth claim is that it is entitled to a new trial because the jury result was influenced by passion and prejudice caused by the closing remarks of DPS's counsel. The district court denied Rollins' motion for a new trial on this issue. "[R]eview of the denial of a new trial motion is more limited than when one is granted." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998). Our standard of review in this situation is "more deferential than our review of the denial of a motion for a judgment as a matter of law." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998). We must affirm the district court's denial of Rollins' motion for a new trial absent a "clear showing of an abuse of discretion." *Id.* "The propriety of an argument is a matter of federal trial procedure . . ., and, therefore, in a diversity case, subject to federal rather than state law." *Whitehead*, 163 F.3d at 275 (internal citations omitted).

To support this claim, Rollins relies upon *Whitehead*, where we held that "awards influenced by passion and prejudice are the antithesis of a fair trial," and remanded the case for a new trial on damages. *Whitehead*, 163 F.3d at 276, 278. Although the closing argument in this case was theatrical and had repeated references to historical and literary figures associated with Texas,[2] it simply is not the type of argument addressed in *Whitehead*. *Whitehead* was a civil liability case stemming from the kidnaping of a mother and her daughter from the parking lot of a national retail store and the subsequent rape of the mother. This Court noted the emotional nature of that case made it a "fertile ground" for the bias associated with passion and prejudice. *Id.* at 276.

---

[2]For example, counsel for DPS referred to the Texan author Larry McMurtry's book, *Lonesome Dove*, as well as to the notable Texans Stephen F. Austin, Benjamin Rush Milam, and Lyndon Johnson.

Furthermore, the counsel in *Whitehead* made repeated arguments designed to inflame the passions of the jury in violation of the instructions of the trial judge.[3] The *Whitehead* counsel also played to local prejudice.[4] Finally, unlike this case, the counsel in *Whitehead* engaged in a "Golden Rule" argument by asking the jurors to place themselves in the position of the rape victim when reaching their verdict.[5]

In addition, Rollins never objected to the argument at trial. *But cf*. *Whitehead*, 163 F.3d at 265 (noting that "[a]t least a few pertinent objections were made during the [prejudicial] closing argument"). The counsel in *Whitehead* twice disregarded the district court's instructions to avoid certain objectionable arguments, and was eventually sanctioned by the district court. *Whitehead*, 163 F.3d at 276-77, 277 n.3. In contrast, here the district judge specifically praised the performance of

---

[3]For example, counsel stated that plaintiff's "last thought before death would be of the rapists, and that [her daughter] needed to be compensated to avoid thoughts, on her wedding night, of her mother's rape." *Whitehead*, 163 F.3d at 277. These statements were made in closing argument despite the fact that neither person so testified. *Id*. *See also Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 285-86 (5th Cir. 1975) (finding a closing argument in a wrongful death case prejudicial when it evoked images of the deceased's children crying at their father's grave site and waiting for their father on the porch steps).

[4]DPS's counsel in this case made reference to the fact that Rollins is not a Texas corporation, but Rollins' counsel also mentioned this fact during their closing argument, claiming DPS's location in Lufkin, Texas while Rollins was headquartered in Atlanta, Georgia assisted DPS in perpetrating the fraud that Rollins alleged at trial. This case differs from *Whitehead* in that DPS's counsel did not ask the jury to find for DPS because it was headquartered in Texas and Rollins is not. *Cf. Whitehead*, 163 F.3d at 276-77 (noting that plaintiff counsel's repeated emphasis on the defendant's national rather than local status was exacerbat ed by his refusal to abide by the district court's sustained objections to his repeated comments that the defendant did not present certain proof through non-local witnesses).

[5]The counsel in *Whitehead* estimated the length of time from when the victims were abducted until their release to be 7,200 seconds, had the jury wait silently for 10 seconds, and then asked: "[C]an you imagine how it would feel to have a knife in your side or a knife on your leg or a pistol at your neck for ten seconds." *Whitehead*, 163 F.3d at 278.

DPS's counsel during closing argument.[6] We are "most cognizant of the fact that the trial judge is in a far, far better position than we to gauge the effect of closing arguments; he is present and hears the statements, while we are limited to the cold record." *Whitehead*, 163 F.3d at 278 n.4.

Finally, this Court has recognized that jury verdicts improperly influenced by passion and prejudice can be indicated by their size. *Whitehead*, 163 F.3d at 278 ("Without deciding that the awards are excessive, we note that, at the very least, they are at the high end of the spectrum for such damages."); *see also Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1240 (5th Cir. 1985) (finding a large verdict accompanied by a prejudicial closing argument can lead to the conclusion that the argument had an influential impact upon the jury's deliberations). The jury verdict in this case is not inconsistent with reasonable deliberations on the evidence of the contractual relationship presented to the jury. When considered together, the facts that: 1) Rollins made no objection at trial; 2) the district court judge praised the skill of the closing argument; and 3) the jury award is not wholly inconsistent with reasonable deliberation on the evidence buttress this Court's conclusion that the closing argument by DPS's counsel was not prejudicial. Rollins' sixth claim fails.

IV

The seventh issue on appeal is a challenge to the district judge's award of attorneys' fees to DPS.[7] Texas state law governs the attorneys' fee award in this case, and the standard of review for

---

[6] The total hours billed by the attorney making DPS's closing argument were not reduced when he filed his claim for attorney's fees, and the district judge found them "reasonable, given his eleventh hour appearance in the case and his able representation of [DPS] during trial." In addition the district judge did not reduce the hourly rate this attorney requested finding it "reasonable, given his extensive trial experience and skill, which he displayed during trial." In contrast, the district judge decreased the hours and fees for every other attorney representing DPS.

[7] Texas state law provides for the award of attorneys' fees in an action based on a breach of contract claim. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon Supp. 2002). The parties

-14-

an award of attorneys' fees is whether the trial court abused its discretion in making the award. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."). Under Texas law, there is discretion to determine the amount of the attorneys' fee award, but an award of reasonable fees is mandatory if a party prevails in a breach of contract case and there is proof of reasonable fees. *Mathis*, 302 F.3d at 462 (citing *World Help v. Leisure Lifestyles*, 977 S.W.2d 662, 683 (Tex. App.)) Fort Worth 1998, pet. denied). A trial court's award is unreasonable "only if the court acted without reference to any guiding rules and principles." *City of Austin v. Janowski*, 825 S.W.2d 786, 788 (Tex. App.)) Austin 1992, no writ). Rollins makes two claims regarding the attorneys' fee award. First, Rollins claims that the trial court did not adequately scrutinize the records when calculating the attorneys' fees. Second, Rollins claims that DPS is not allowed to recover for the attorneys' time spent defending against Rollins' counterclaims at trial. *See e.g., Ventana Invs. v. 909 Corp.*, 879 F. Supp. 676, 678 (E.D. Tex. 1995) (finding that the Texas attorney fee statute does not include a provision allowing recovery for successful defense of a contractual lawsuit).

Rollins' claim that the district court failed to adequately scrutinize the record fails. The district court withheld judgment on the attorneys' fees award until it received all of the billing records from the DPS attorneys. Rollins challenged a number of the billing entries of the lead DPS attorney before the district court, claiming that certain billings represented inefficiency or time spent on unsuccessful motions. The district court considered the requirements set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), when determining the lodestar

---

agreed at pretrial conference that the matter of attorneys' fees would be submitted to the district court by affidavit.

-15-

amounts. *See Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App.) ) El Paso 2002, pet. denied) (adopting the *Johnson* factors for Texas attorneys' fee calculations conducted using the lodestar method). In addition, the claims Rollins raises on appeal are virtually identical to those made before the district court. The district court considered those claims and found the hours billed by the lead DPS attorney reasonable in light of his relative inexperience, the relative complexity of the case, and the vigorous defensive hurdles Rollins presented. The court took the relative inexperience of the lead DPS attorney into account when it decreased his billing rate from the $175 per hour requested to $150 per hour. The trial court also considered the hours billed and the hourly rate for the rest of the attorneys for DPS, adjusting both amounts to reflect the levels the court found reasonable in light of their representation of DPS at trial. Furthermore, a party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim. *See North Am. Corp. v. Allen*, 636 S.W.2d 797, 800 (Tex. App.) ) Corpus Christi 1982, no writ). In light of this careful consideration of the attorneys' fees by the district court, the first portion of this claim fails.

Rollins' second complaint requests that the attorneys' fee award be remanded to the district court because DPS's attorney did not segregate the hours spent pursuing DPS's breach of contract claims from the hours spent defending against Rollins' counterclaims. Rollins claims that attorneys' fees cannot be recovered under Texas law for defending against contract claims. *See Ventana*, 879 F. Supp. at 678; *Aetna Cas. & Sur. v. Wild*, 944 S.W.2d 37, 41 (Tex. App.) ) Amarillo 1997, writ denied) (holding that unsegregated attorneys' fees must be remanded). However, Texas law explicitly recognizes that fees need not be segregated where "the services rendered relate to (1) multiple claims arising out of the same facts or transaction and (2) the prosecution or defense entails proof or denial of the same facts, so as to render attorney's fees inseparable." *Aetna*, 944 S.W.2d at 41. Here the

-16-

district judge expressly found that DPS's defense of Rollins' claims was "so intertwined with Plaintiff's breach of contract claim against Rollins as to constitute a single claim." In light of these findings, this Court finds that the district judge did not abuse his discretion in the award of attorneys' fees to DPS.

V

Rollins' eighth, and final, claim on appeal relates to the district court's order awarding costs to DPS pursuant to 28 U.S.C. § 1920. We reverse a district court's award of a bill of costs "only on a clear showing of abuse of discretion." *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). Rollins claims the trial court erred by accepting the affidavit filed by DPS's counsel containing a blanket statement that all of the expenses he claimed were actually and necessarily incurred for trial. Rollins claims the blanket statement approach is inadequate to support an award of costs. We do not need to reach this issue. It is enough to conclude the district court did not clearly abuse its discretion in this case to note the disagreement among the district courts as to the level of specificity necessary to support an award of costs. *See Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 484 (5th Cir. 2002) (noting that the local rules for the Eastern District of Louisiana do not mandate itemization of costs). *But see Auto Wax Co. v. Mark V Prods., Inc.*, No. CIV.A.3:99-CV-0982-M, 2002 WL 265091 (N.D. Tex. Feb. 22, 2002) (disallowing certain costs because the prevailing party only made a blanket statement regarding necessity). Furthermore, in addition to the affidavit from DPS's attorney stating that all of the costs claimed were necessary, the district court also received copies of the receipts for the payment of the costs and brief descriptions of each claimed cost. Rollins fails to clearly show the district court abused its discretion, and its eighth claim fails.

VI

-17-

DPS raises four claims on cross-appeal. The first of these claims is that the district court erred when it interpreted the pretrial order[8] to preclude DPS from presenting evidence relating to its damages from before November 2000. Alternatively, DPS claims it was an abuse of discretion for the trial court to refuse to modify the pre-trial order to allow the introduction of this evidence. A trial court's interpretation of a pretrial order is reviewed for abuse of discretion. *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 212 (5th Cir. 1991). We cannot conclude that the trial court abused its discretion when it interpreted the pre-trial order to only include damage claims for November and December 2000 and January 2001 because, in the pretrial order, DPS only requests damages for "services rendered in November and December of 2000, as well as the flat monthly fee . . . for January 2001."

This conclusion is not dispositive, and we must consider the district court's refusal to modify the pre-trial order. A pre-trial order is intended to govern the subsequent course of the actions and should only be modified to avoid manifest injustice. FED R. CIV. P. 16(e). "[I]n the interest of justice and sound judicial administration, an amendment of a pretrial order should be permitted where no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight." *Sherman v. United*

---

[8]The relevant language from the pretrial order is:

> In the months prior to December 2000, [Rollins] began to fall behind on payments owed for [DPS's] consultants. On December 15, 2000 - in response to [DPS's] request for payment - [Rollins] suddenly announced that they would not pay past due invoices. [DPS] removed its consultants from the project on December 18, 2000 because of [Rollins's] refusal to pay for services rendered. [Rollins] owe[s] for services rendered in November and December of 2000, as well as the flat monthly fee of $243,000 for January 2001.

*States*, 462 F.2d 577, 579 (5th Cir. 1972). Based upon the record in this case, we cannot conclude that there would have been no substantial injury caused to Rollins or inconvenience to the district court if DPS had been allowed to modify the pre-trial order. Thus, it was not an abuse of discretion for the district judge to refuse to allow DPS to modify the pre-trial order. DPS's first claim on cross-appeal fails.

VII

DPS's second claim on cross-appeal co ncerns the prejudgment and postjudgment interest rates set by the district court in its final judgment. The interest award is a question of law and is reviewed *de novo*. *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994). In its final judgment, the district court awarded DPS a ten percent prejudgment interest rate, and a 1.75 percent rate for postjudgment interest. Prejudgment interest is governed by Texas law, and DPS is entitled to the rate specified in the contract. *See Harris*, 15 F.3d at 429 ("State law governs the award of prejudgment interest in diversity cases."); *Adams v. H&H Meat Prods., Inc.*, 41 S.W.3d 762, 780 (Tex. App.) ) Corpus Christi 2001, no pet.) (prejudgment interest rate is the rate set forth in the contract). In a diversity case, the federal post-judgment interest statute applies. *Harris*, 15 F.3d at 431. Postjudgment interest accrues at the rate determined under 28 U.S.C. § 1961(a). DPS filed a motion with the district court to reform the prejudgment and postjudgment interest awards to conform with the statutory requirements. The district court denied the motion because this appeal was pending. The ten percent prejudgment interest and the 1.75 percent postjudgment interest rates were not the proper rates specified in the parties' contract or under federal law, respectively. The prejudgment and postjudgment interest awards are remanded to the district court to determine the correct interest

-19-

rates to be applied to the judgment.

DPS's third claim on cross-appeal is that the trial court erred by declining to expressly provide DPS with attorneys' fees for this appeal. State law governs the award of attorneys' fees in this case. *Mathis*, 302 F.3d at 461-62. An award of attorneys' fees is mandatory for a party prevailing in a breach of contract case. *Gunter v. Bailey*, 808 S.W.2d 163, 166 (Tex. App.)) El Paso 1991, no writ). Texas law further provides that a party entitled to recover attorneys' fees at trial is also entitled to recover them for successfully defending the case on appeal. *Id*. at 165-66. Accordingly, DPS is entitled to attorneys' fees relating to its defense of the district court judgment in this appeal. This issue is remanded to the district court to determine the proper amount of attorneys' fees to award DPS for this appeal.

The final claim DPS raised on cross-appeal is that the trial court erred by reducing its attorneys' fee award by $27,000. The district court reduced this fee award to avoid double recovery for attorneys' fees under the tortious interference damage claim and the attorneys' fee award. This decision to prevent double counting fees was neither arbitrary nor unreasonable, thus the district court did not abuse its discretion in modifying the attorneys' fee award in this manner. *See Mathis*, 302 F.3d at 461-62. The fourth claim DPS raised on cross-appeal fails.

## VIII

For the above reasons, we AFFIRM the judgment of the district court except as follows. We VACATE the portion of the breach of contract damage award relating to January 18 through January 31, 2001. We REMAND the breach of contract damage award for the period from January 1 through January 17, 2001; the prejudgment and postjudgment interest awards; and the appellate attorneys' fees award to the district court for determination of the proper amount of these awards consistent

-20-

with this opinion.