United States Court of Appeals
Fifth Circuit

**F I L E D**

May 5, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-20845
_____

MD SARDAR A. DAUD KHAN,

                                    Plaintiff - Appellant,

versus

TRANS CHEMICAL LTD,

                                    Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:02-CV-109

_____

Before JOLLY, BEAM,[1] and BARKSDALE, Circuit Judges.

PER CURIAM:[2]

This appeal arises from a 1988 employment contract between

Sardar A. Daud Khan and Trans Chemical Ltd., of which Khan was half

owner.  Khan brought suit against TCL seeking salary and penalties

under the ten-year employment contract entered between the parties

on October 1, 1988.  The parties stipulated damages and waived a

jury trial.  The district court conducted a bench trial and entered

judgment for TCL.  Khan appeals, alleging four points of error by

the district court:  (1) construing both the board minutes from the

---

[1] Senior Circuit Judge, United States Court of Appeals for the
Eighth Circuit, sitting by designation.

[2] Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

October 1, 1988 board meeting together with the document entitled "Employment Contract of The Chairman" (employment contract) as the contract between Khan and TCL; (2) concluding that Khan was not due compensation under the contract after the TCL hydrogen peroxide plant in Pakistan was closed in February 1994; (3) finding that the claims for salary prior to December 14, 1997 were barred by the statute of limitations; and (4) denying Khan attorney's fees. After consideration of the arguments and review of the record, we affirm largely for the reasons stated by the district court.

I

Khan's first point of error requires consideration of two points. First, what document or documents constitute the agreement between these parties and, second, whether that agreement contains the December 31, 1996 deferral deadline. We consider each question in turn.

A

The district court found that TCL entered an employment agreement with Khan that contained a provision allowing salary to be deferred up to December 31, 1996, and that their agreement was memorialized by both the minutes of the board meeting and the employment contract. Consequently, both documents combine to create the unified contract between Khan and TCL. We agree for the following reasons:

1. Texas follows the established principle that when construing a contract, "our first priority is to determine the

2

intent of the parties." Ludwig v. Encore Medical, L.P., __ S.W.3d __, 2006 WL 565922, *4 (Tex. App. March 9, 2006) (citations omitted). To that end Texas law requires that "all writings that pertain to the same transaction . . . be considered together, even if they were executed at different times and do not expressly refer to one another." DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999); see also 17A Am. Jur. 2d Contracts § 379; Restatement (Second) of Contracts § 202(2) (1981). Although this principle "cannot be applied arbitrarily and without regard to the realities of the situation," Miles v. Martin, 321 S.W.2d 62, 65 (Tex. 1959), it is clear that under Texas law "courts may construe all the documents [relating to the same transaction] as if they were part of a single, unified instrument" in order to give effect to the parties' intent. See Ft. Worth Indep. Sch. Dist. v. City of Ft. Worth, 22 S.W.3d 831, 840 (Tex. 2000) (finding that "two [city] ordinances and the contemporaneous, related documents comprise the parties' agreement") (citations omitted); see also DeWitt Co. Elec. Coop., 1 S.W.3d at 102 (construing an easement agreement, a service agreement, and a cooperative tariff as one contract); Jones v. Kelley, 614 S.W. 2d 95, 98-99 (Tex. 1981) (holding that two contracts, a financing agreement, and one vendor's affidavit together constituted the contract between the parties); Rudes v. Field, 204 S.W.2d 5, 7-8 (Tex. 1947) (holding a deed and an agreement relating to the sale and management of the property together constituted the contract).

3

2.     By Khan's own testimony, the board minutes and the employment contract were considered by the respective parties as "one package," executed at the same time, with the same signature page, for the purpose of officially hiring Khan and Halipoto to conduct the necessary business to build and operate the peroxide plant.     Together these documents document the entirety of the agreement between TCL and Khan.[3]

3. Consequently, the district court (quoting <u>Jim Walter Homes v. Schuenemann</u>, 668 S.W.2d 324, 327 (Tex. 1984)) was correct to

---

[3] There are three relevant documents:  first, the one-page employment contract; second, the three pages of minutes from the October 1, 1988 board meeting; and finally, an undated signature page on TCL letterhead containing only the signatures of the six TCL board members.  At trial, counsel for Khan attached the signature page to the employment contract and tendered that as a separate exhibit from the three pages of board minutes.  The inference that these documents were separately considered or separately executed is, as the district court found, inconsistent with the reality of the situation.  By Khan's own deposition testimony the minutes and the employment contract were typed by him and presented together to the board for consideration with one signature page covering the whole package:

> You know, they approved -- the board approved this contract and the board approved the minutes of the meeting.  That's why they signed the minutes of the meeting.  And this [the signature page] is also a part of the contract -- I mean, I'm sorry.  This is basically -- it's one package, signed by the – by the board members."
>
> . . . .
>
> I say it so many times that this contract and the minutes of the meeting were done simultaneously and it was approved by the board members and here [signature page] are the board members and their signatures.

find that "Khan's employment contract and the contemporaneous board meeting minutes -- 'executed at the same time, for the same purpose, and in the course of the same transaction' -- are properly construed as one document."[4]

Having determined that the board minutes and the employment contract together provide the unified agreement of the parties we turn next to examine whether that agreement contains the December 31, 1996 deferral deadline.

B

The district court found that the board unanimously adopted the resolution of Dr. Halipoto that in the event TCL was unable to pay, all salaries and resulting penalties could be deferred until December 31, 1996. This resolution was memorialized in the minutes. Thus, the December 31, 1996 compensation deferral date is a part of the contract between these parties, and the statute of limitations bars Khan's claims for salary and the associated

---

[4] Khan's argument that the parol evidence rule prohibits this result is without merit. The parol evidence rules prohibits the examination of extraneous evidence to interpret an unambiguous contract. However, a document is only "extraneous evidence" if it is not a part of the contract itself. Our inquiry is not "what does the contract mean," but rather "what is the contract." Consequently the parol evidence rule is not implicated at this stage in the analysis.

penalties from June 15, 1991[5] through December 31, 1996.  We affirm

for the following reasons:

1.  Khan repeatedly testified both at his deposition and at

trial that the board minutes constitute an accurate account of the

proceedings at the October 1, 1988 TCL board meeting.

2.  The minutes clearly reflect that Dr. Halipoto suggested,

and the board unanimously adopted, a resolution requiring that all

deferred salary and the accrued penalty be paid by December 31,

1996.[6]

---

[5] Khan does not appeal the September 4, 2003, district court ruling that he is judicially estopped from claiming any salary or penalty arising before June 14, 1991, the date on which he filed his bankruptcy petition.  Consequently, the earliest date from which Khan can claim damages in this suit is June 15, 1991.

[6] Specifically, pages 1 and 2 of the minutes reflect the following:

> Dr. Halipoto suggested an idea of deferred salary program. . . . The officers will be paid only monthly salary for their duties performed regarding TCL's business.  If because of cash flow problems, TCL does not have to pay the salary to its officers, the payment will then be deferred till [sic] TCL's finances improve.  However[,] under no circumstances will salary payment to officers be deferred beyond December 31, 1996, and full payment and a penalty will become due in full.

> . . . .

> After a discussion, the directors considered the delayed payment idea to be the most logical approach.  Motion was made dually by Dr. Halipoto and seconded by Mrs. Khan, after discussion it was unanmously [sic] resolved that:

6

3. The minutes then provide Khan's job description. The job description, while containing the details of the compensation package, does not contain an express deferral provision, nor does it reference the earlier adopted board resolution containing the December 31, 1996 deferral provision. The job description was adopted unanimously by the board. The employment contract mirrors the job description section of the minutes. Like the minutes, the employment contract contains no deferral provision.

4. Khan argues that this omission in the job description and employment contract was intentional. He testified at trial that the board reconsidered and ultimately rejected the December 31, 1996 deferral date and intended that deferral be allowed up until the date the contract terminated on September 31, 1998.

5. The district court found that Khan's testimony was not credible.[7] Khan's testimony is the only evidence that suggests the

> "Dr. Khan and Dr. Halipoto were appointed Chairman and Managing Director of TCL[,] respectively[,] and their salary will be paid as recommended by Dr. Halipoto."

[7] Specifically the district court noted the following testimony:

> Q: Part of the issue that brings us here, among the issues, is the dispute over what happened to the board resolution that was initially proposed that no salary is going to be deferred beyond December 31, 1996. Do you recall any specific discussion of eliminating that provision?
>
> A: To the best of my recollection, it was

7

proposed by Dr. Halipoto.

Q:    Right.

A.    And later it is amended. Because if you read – I believe a couple more pages down the line, it said the contract should be for ten years.

         . . . .

Q:    [M]y question to you is whether you recall any specific discussion of disapproving the eight-year, but no more than eight-year deferral provision.

A:    I'm going to use my best recollection that this 1996 was not acceptable, and that's the reason we changed [it] to ten years. And that's how the contract was written.

Q:    Do you recall a specific discussion of the relationship between -- about why eight years wasn't acceptable because it's not reflected in these minutes.

A:    What I'm saying is to the best of my recollection, it was not acceptable. So, that's why it was changed to ten years. And the board agreed to it, and they had the minutes of the meeting. They had the contract in front of them. They agreed to the ten years. And, you know, ten years was acceptable to everybody and that's how it was signed.

Q:    Do you have any recollection of any specific discussion of why the eight years which you had just approved was not acceptable, to use your word?

A:    To the best of my recollection, it was not acceptable to me and to Dr. Halipoto. We discussed that issue, and we decided to go for ten years.

8

December 31, 1996 deferral date was intentionally omitted, that the board revoked its resolution adopting the December 31, 1996 deferral date, or that the board intended the lack of deferral term in the job description and employment contract to imply compensation deferral until termination of the contract on September 31, 1998. The otherwise detailed minutes do not mention any conversation disapproving of the 1996 deferral date, nor do they reference a resolution to that effect.

6. Applying the December 31, 1996 deferral date adopted by the unanimous board of TCL does not void or conflict with any other term of the job description or employment contract. Nor does it in any way alter the duties or responsibilities of the parties in a way that is inconsistent with the express terms of the agreement.

7. Giving the district court's credibility findings the deference due them, we find nothing in the record to suggest the board intended to reject its adoption of the December 31, 1996

---

Q: Do you have any explanation for why that wasn't -- why that discussion after first specifically approving an eight-year deferral period is not reflected in the minutes directly or explicitly?

. . . .

A: To the best of my recollection, I don't believe that 1996 was the cutoff period. I don't believe that. I strongly believe it was for ten years. And it was acceptable to Dr. Halipoto. He signed it. I signed it. Both agreed upon it, and that's how this ten-year period came up.

9

deferral date. See Matter of Complaint of Luhr Bros., Inc., 157 F.3d 333, 337-38 (5th Cir. 1998) (citing Rule 52(a) and holding that "Rule 52(a) requires greater deference to the trial court's findings when they are based upon determinations of credibility"). Nor do we find any evidence in the otherwise detailed minutes, or the record to suggest that the parties intended to imply deferral of compensation until the termination of the contract on September 30, 1998.

8. We are required to examine the entirety of a contract, construing it in a way that gives meaning to each of its terms in order to give full effect to the parties' intent. See, e.g., Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983) (holding that the "entire writing" must be considered in an effort to harmonize and give effect to all the provisions of the contract so that none are rendered meaningless). Thus, we conclude that the district court was correct in finding that the December 31, 1996 deferral term, adopted unanimously by the board of directors (including Khan), is a part of the employment agreement between TCL and Khan.

9. A breach of contract claim accrues when a party fails or refuses to do something it has promised to do. See, e.g., Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002). Thus, when TCL failed to pay the deferred salary and penalty due Khan on December 31, 1996, Khan's breach of contract claim as to those damages accrued. Applying Texas's four-year contract statute of limitations, TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.004(a), 16.051 (Vernon 2004), Khan's

10

claim for the salary and penalty owed him from June 15, 1991 through December 31, 1996 is barred by the statute of limitations.[8]

## II

In his second point of error Khan argues that he is due compensation under the contract even after the plant ceased operations in February 1994. Under Texas law, in order to recover damages a party claiming a breach of contract must either tender performance <u>or</u> show that he was ready, willing, and able to perform his obligations under the contract. <u>See</u>, <u>e.g.</u>, <u>Whitney Props. Corp. v. Moran</u>, 494 S.W.2d 587, 590 (Tex. App. 1973, no writ). We consider each possibility in turn.

### A

Khan argues that by conducting the arbitration and litigation against China National Import and Export Corporation (CMC) on behalf of TCL he tendered performance under the contract and is thus due compensation. The district court rejected this contention. We affirm for the following reasons:

1. Khan's contract with TCL authorized him to perform six specific duties, each relating to building the plant, operating the plant, and selling what it produced. The contract required Khan to

---

[8] Khan does not appeal the finding of the district court that his failure to serve TCL until five months after the filing of this suit demonstrated a lack of the required diligence. Consequently, the district court's holding that the statute of limitations was tolled only when service was accomplished on December 14, 2001 stands. Thus, the statute of limitations bars all claims under the contract which accrued prior to December 14, 1997.

use his best effort and judgment to have the plant completed in a timely manner and to "enhance its business"; preside over the meetings of the board of directors; provide an office, secretarial assistants, telephone, computers, telex, and stationery in Houston; travel in the United States and abroad at his own expense and negotiate and purchase the catalysts and chemicals for the plant; visit the project periodically in Pakistan and assist in legal and financial work needed during the construction phase; and provide a liaison between CMC and other vendors with respect to importation of the catalysts and chemicals for the plant. None of these descriptions authorize any activity continuing after the plant has closed.[9]

2. By Khan's own testimony, the arbitration and litigation against CMC were pursued to "take care of the interests of [TCL's] shareholders." This action, although certainly understandable given Khan's own personal investment in TCL and ownership of 50% of its stock, is simply not within the scope of his contract to build and operate the peroxide plant. The district court found that:

> Pursuing arbitration and litigation after construction had ended and after the plant had ceased to operate, to protect the interests of

---

[9] To the extent that Khan claims he was acting under a broader authority vested in him by virtue of the title or position of "Chairman" he is incorrect. Apparent authority may exist by virtue of a position when an agent or officer of a corporation is dealing with a third party. It does not, however, create extra-contractual authority as between the parties to a contract such that an officer may seek compensation for actions not authorized by the board of directors.

the shareholders consisting primarily of Khan and Halipoto does not fall within the scope of the specifically-defined contractual responsibilities to complete the hydrogen peroxide plant construction project and "enhance" the business. That business depended on a functioning, operating hydrogen peroxide plant, which did not exist after February 1994.

We agree. Consequently the district court was correct to find that Khan did not tender performance <u>under his employment agreement</u> after the plant closed in February 1994.

B

Alternatively, Khan argues that he is due compensation as he was ready, willing, and able to perform his duties under the contract for the duration of the contract term. The district court rejected this contention. We affirm for the following reasons:

1.   The doctrine of impossibility recognizes that "if performance is contingent upon the continued existence of a state of things or set of circumstances, a condition is implied that the cessation of existence of such state of things excuses performance." See <u>In Interest of Doe</u>, 917 S.W.2d 139, 142 (Tex. App. 1996 reh'g overruled). Khan's ability to perform under the contract post-construction was contingent upon an operating peroxide plant. Consequently, when the plant closed Khan was not, and could not be, "ready, willing, and able" to perform his post-construction duties as provided in his employment contract.

2.   It is undisputed that Khan fully performed under the contract up to February 1994. Further, no party contends that Khan

13

was in any way responsible for the closure of the plant. Thus, the non-existence of an operational plant by fault of a third party excuses Khan's non-performance under the contract. See e.g., Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co., 118 S.W.3d 60, 65 (Tex. App. 2003), opin. supplemented on overruling of reh'g, 118 S.W. 3d 929 (Tex. App. 2003) (holding that Texas courts will excuse performance where a thing necessary for performance has deteriorated or been destroyed); see also Restatement (Second) of Contracts § 261 (1981) ("Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.").

3. Well-accepted contract law provides that if one party's failure to perform is excused due to the non-occurrence of a condition, the other party to the contract is excused from performance unless it agreed to perform in spite of such failure. See Restatement (Second) of Contracts § 239 (1981); 14 Williston on Contracts § 43:11 (4th ed.); 14 Corbin on Contracts § 75.4 (2001).

4. There is no evidence to suggest that any agreement between Khan and TCL addressed the risk or the obligation of the parties should the hydrogen peroxide plant close. The record indicates that the plant's closure was attributed to the faulty technology provided by CMC. The failure of the plant to operate, due to acts

14

of a third party, excused both Khan and TCL from their contractual obligations.  Thus, Khan cannot recover under the contract for any activities he undertook after the plant closed in February 1994.

### III

Khan's third contention is that the district court erred in construing the statute of limitations to run each month such that he is barred from claiming any salary or penalties due prior to December 14, 1997.  Our determinations that the statute of limitations bars any claim for salary before December 31, 1996, and that the closure of the plant excused both parties from performance after February 1994 make resolution of this issue unnecessary, and accordingly we will not address this alleged point of error.

### IV

Khan's final claim is that he is due reasonable attorneys' fees in the stipulated amount.  Because Khan is not the prevailing party, the district court's denial of attorneys' fees is affirmed. See DP Solutions, Inc. v. Rollins, Inc., 353 F.3d 421, 436 (5th Cir. 2003) ("An award of attorneys' fees is mandatory for a party prevailing in a breach of contract case."); TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2005).

### V

For the reasons stated herein we hold that the employment agreement between Khan and TCL includes the December 31, 1996 deferral date, and thus all claims for salary and penalty due up to that date are barred by the statute of limitations.  Further, we

15

hold that the actions of Khan after the closure of the plant in February 1994 were not authorized by the contract, and that the unanticipated closure of the plant excused both Khan and TCL from performing under the contract after February 1994. Consequently, Khan is not entitled to salary and penalties for his post-closure activities. Finally, Khan is not due attorneys' fees as he has not prevailed on his claim. Accordingly the judgment of the district court is

AFFIRMED.