IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 06-50398

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 25, 2007

Charles R. Fulbruge III

Clerk

BOB FOSTER; CAROL FOSTER,

Plaintiffs-Appellants

v.

ALLSTATE INSURANCE COMPANY,

Defendant-Appellee

_____
Appeals from the United States District Court
for the Western District of Texas
(1:03-CV-767)
_____

Before HIGGINBOTHAM, DAVIS, and WIENER, Circuit Judges.

PER CURIAM[*]:

At the conclusion of the parties' insurance-coverage trial, the jury returned a verdict finding that Defendant-Appellant Allstate Insurance Company ("Allstate") had committed a breach of contract under its Homeowners' Policy ("the Policy") insuring Plaintiffs-Appellants Bob and Carol Foster (collectively, "the Fosters"). The jury nevertheless found that this breach caused the Fosters to suffer no damages.

Asserting irreconcilable inconsistencies in the jury's

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

verdict, the Fosters filed motions seeking a post-trial judgment as a matter of law and for a new trial. The district court denied both these motions, concluding that (1) there was a legally sufficient basis for the jury's verdict, (2) the verdict was not against the great weight of the evidence, and (3) allowing the verdict to stand would not result in a miscarriage of justice. We affirm.

## I. FACTS AND PROCEEDINGS

After the Fosters discovered mold infestation in their home in December 2001, they made a claim under the Policy. Allstate determined that the mold was caused by a covered peril and began adjusting the claim.

Mold Restoration, Inc. ("MRI") was hired to perform the mold remediation process on the Fosters' home. As part of the process, the Fosters' personal property had to be removed from the home. It ended up in three different locations: (1) the Fosters' temporary residence; (2) a storage unit at Lakeline Storage; and (3) a storage unit at Public Storage.

While the remediation process was in progress, the Texas Attorney General's Office began investigating MRI for fraud. MRI eventually went into receivership. As a result of its predicament, MRI failed to pay rent at Public Storage. A substantial portion of the Fosters' personal property that was

2

being held there was sold at auction.

The remediation work in the Foster's house was eventually completed, but the Foster's house remained in need of considerable restoration work. Despite multiple estimates and offers of payment between the parties, the Fosters and Allstate were unable to agree on a cost for the restoration work, so it was never completed.

In July 2003, the Fosters filed suit against Allstate in Texas state court, which was subsequently removed to the district court. In their complaint, the Fosters sought damages arising from the uncompleted restoration work and the auction sale of their personal property. They grounded their claims in (1) breach of contract, (2) negligence, (3) violation of Article 21.21 of the Texas Insurance Code, (4) violation of Article 21.55 of the Texas Insurance Code, and (5) breach of the common law duty of good faith and fair dealing. Only the breach of contract claims concerning damage to the Fosters' personal property are relevant to this appeal.

The case proceeded to jury trial in April 2004, at the conclusion of which the jury returned a special verdict. Among other things, the jury found Allstate guilty of breach of contract but also determined that the Fosters had suffered no damages as a result of this breach.

3

Following the verdict, both parties made post-trial motions. Allstate asked the district court to enter a take-nothing judgment, and the Fosters sought a judgment as a matter of law, asking that the district court disregard the jury's "zero damage" award for Allstate's breach of contract and enter a judgment for either $447,000.00 (the value of their lost personal property including its sentimental value) or $191,400.00 (the value of their lost personal property excluding its sentimental value). Determining that there was a sufficient evidentiary basis for a reasonable juror to award a $0.00 verdict, the district court denied the Fosters' motion and granted Allstate's motion, entering a take-nothing judgment.

After the district court rendered its judgment, the Fosters filed a motion for new trial on the issue of their personal property loss. The district court denied this motion, concluding that (1) the verdict was not against the great weight of the evidence and (2) allowing the verdict to stand would not result in a miscarriage of justice. The Fosters timely filed a notice of appeal.

## II. LAW AND ANALYSIS

A. <u>Standard of Review</u>

On appeal, the Fosters challenge the district court's denial of their post-trial motions for judgment as a matter of law and

4

new trial, contending that the jury's answers to special interrogatories were conflicting and against the great weight of the evidence. We review a district court's denial of a motion for judgment as a matter of law <u>de novo</u>, affording much discretion to the jury's verdict.[1] Accordingly, judgment as a matter of law will be granted only if the facts, and the inferences to be drawn from them, are so strongly in favor of the moving party that a reasonable juror could not reach a contrary conclusion.[2]

Our standard of review for a denial of a motion for new trial is more deferential than for a judgment as a matter of law.[3] We must affirm a district court's denial of a new trial motion unless the court abused its discretion.[4]

B.  <u>Merits</u>

Special verdicts, such as that employed by the district court here, are useful in clarifying a jury's verdict and focusing its attention on the disputed fact issues.[5]

---

[1] <u>Coffel v. Stryker Corp.</u>, 284 F.3d 625, 630 (5th Cir. 2002).

[2] <u>Id.</u>

[3] <u>DP Solutions, Inc. v. Rollins, Inc.</u>, 353 F.3d 421, 431 (5th Cir. 2003).

[4] <u>Id.</u>

[5] <u>FDIC v. Munn</u>, 804 F.2d 860, 866 (5th Cir. 1986).

Nevertheless, special verdicts simultaneously present the risk of conflicting answers.[6] When a jury's answers present an apparent conflict, it is our duty to reconcile the conflicts if at all possible in an effort to uphold the jury's verdict.[7] Only when, after a concerted effort, we cannot reconcile the answers, may we grant a new trial.[8]

The question on appeal here is whether it is possible to reconcile the jury's findings that (1) Allstate breached its contract and (2) the Fosters suffered no monetary damages from that breach. We conclude that such reconciliation is legally plausible.

The Fosters asserted three separate claims for breach of contract. First, the Fosters claimed that Allstate's refusal to pay for the lost personal items breached the Policy (a failure-to-indemnify claim). Second, the Fosters asserted that Allstate, as an alleged bailee of the Fosters' personal property, failed to return such property, as required under either an express or implied contract (i.e., that Allstate either hired or controlled MRI and was thus liable under a bailment theory). Third, the Fosters contended, as a separate breach of contract claim, that

_____

[6] Id.

[7] Id.

[8] Id.

6

Allstate failed to accept or reject their personal property claim in a timely manner, as Allstate was required to do under Texas law.[9]  Tellingly, counsel for the Fosters argued at closing:

> The next question you're asked is, do you find from a preponderance of the evidence that Allstate Insurance Company failed to comply with the homeowners policy provision to pay policy benefits as to Bob and Carol Foster's personal property?  I'm sorry, I didn't put that up there well.  A little typo in there, but that's the questions.  Did they fail to comply with the terms of the policy by not covering the personal possessions?  <u>Did they breach the contract</u>?
>
> And the answer is yes, and <u>there's a number of ways</u>.  The first way <u>they breached the contract</u> with us on the personal possessions was, they made — the Fosters made the claim, and <u>within 15 days, Allstate did nothing</u>.  I think you'll find that the evidence is, the Fosters remembered it was about six weeks before Allstate said no.  I think you're going to find the evidence is, <u>Allstate actually waited closer to almost three months before they said no</u>.  But<u> that's the first breach</u>. (Emphasis ours).

Thus, the Fosters not only argued that Allstate breached the Policy, viz., its contract with the Fosters, when it failed to (1) pay for the lost personal property, and (2) return their personal property as bailee, but (3) also charged Allstate with breaching a contractual duty imposed by state law.

Under this last theory — the first one mentioned by the

---

[9]  Under Texas law, an insurer generally has 15 days after receipt of all required items and forms to give notice of its acceptance or rejection of a claim.  Tex. Ins. Code § 542.056.  Our review of the Policy fails to find a stipulated date by which Allstate was required to accept or reject the Fosters' claims.

Fosters' counsel at closing argument — the jury could well have found that Allstate's only breach of its contract was by failing to act timely in accepting or rejecting the claim. At the same time, the jury could have rejected the Fosters' other two breach-of-contract claims. It follows, then, that the jury could plausibly have awarded the Fosters $0.00 in damages for the breach of timeliness, classifying it as only a technical violation of a state timing statute that produced no damage. This is certainly one viable reading of the jury's verdict. Given the concerted reconciliation effort that we must make and the substantial discretion we must afford a potentially irreconcilable special verdict, we are bound to conclude that, as there is a plausible explanation for the jury's verdict here, it was not irreconcilable and need not be reversed and remanded for a new trial.

The Fosters also contend that the jury's verdict was against the weight of the evidence and thus the district court should have ordered a new trial. After an independent review of the record on appeal, however, we find more than sufficient evidence supporting the jury's verdict to conclude that the district court did not abuse its discretion in denying the Fosters' motion for a new trial.

8

### III. CONCLUSION

Based on the applicable law and our extensive review of the parties' briefs and the record on appeal, we hold that the jury's verdict was neither irreconcilable nor against the great weight of the evidence. We therefore affirm the jury's verdict and the district court's judgment based on it.

AFFIRMED.