IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 9, 2007

Charles R. Fulbruge III
Clerk

No. 06-20600

Curlett Family Limited Partnership, Ltd.

Plaintiff-Appellant

v.

Particle Drilling Technologies, Inc., a Delaware Corporation;
Particle Drilling Technologies, Inc., a Nevada Corporation

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
4:06-CV-1012

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:[*]

Plaintiff-appellant, Curlett Family Limited Partnership, Ltd. ("CFLP"),
appeals the district court's June 15, 2006 and June 26, 2006 orders granting the
motion of the defendant-appellees, Particle Drilling Technologies, Inc., a
Delaware Corporation and Particle Drilling Technologies, Inc., a Nevada
Corporation (together "PDTI"), for partial summary judgment and awarding

---

[*] Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

PDTI attorneys' fees.  For the following reasons, we affirm the order granting partial summary judgment and reverse the order awarding attorneys' fees.

FACTS AND PROCEEDINGS BELOW

Harry B. Curlett, the General Manager of CFLP, invented and patented "PID Technology," a method for rapidly drilling well bores in the Earth. On June 1, 2003, CFLP and PDTI executed an Assignment and Assumption Agreement that provided PDTI the exclusive right to use the assigned PID Technology for all applications. On that same day, the parties executed an Exclusive License Agreement ("License Agreement") in which PDTI licensed the non-oil and gas applications of the PID Technology back to CFLP.[1] The result of these two agreements is that PDTI retained the exclusive right to use the PID Technology and its improvements for only oil and gas purposes and CFLP had the right to use PID Technology for all other purposes.

In November of 2004, PDTI filed suit against CFLP in the 333rd Judicial District Court of Harris County, Texas. In this suit, PDTI sought to terminate the License Agreement with CFLP because of alleged fraud committed by CFLP and Harry Curlett. The parties agreed to mediate that dispute, and on February 8, 2006, the parties entered into a Confidential Binding Settlement Agreement ("Settlement Agreement"). The Settlement Agreement required the parties to make a number of amendments to the License Agreement and to release any claims, demands, or suits relating to the License Agreement up to that date. Pursuant to the Settlement Agreement, PDTI and CFLP executed a mutual release of all their claims against each other and moved for the case to be dismissed.[2]

Following the settlement, CFLP submitted a preliminary draft of the amended License Agreement to PDTI, which substituted PDTI's name for its

---

[1] PDTI is the successor organization to Prodril Acquisition Company, the party that entered the Assignment and Assumption Agreement and the License Agreement with CFLP.

[2] On February 21, 2006, the state court signed an order granting the parties motion and dismissed all claims with prejudice.

predecessor's name and added language to Sections 5.1 and 5.2 that would indefinitely grant both parties license rights to improvements made by the other party on or before February 17, 2006. PDTI claimed that CFLP's draft was an erroneous interpretation of the Settlement Agreement, so it submitted its own version of the amended License Agreement to CFLP, which deleted Sections 3, 5.1, and 5.2 and inserted its name in place of its predecessor.

On March 16 and 20, the parties consulted with a mediator in an attempt to resolve their differences regarding the amending of the License Agreement. On March 24, 2006, after the parties were unable to resolve their differences, CFLP filed this lawsuit seeking a declaration of its rights under the Settlement and License Agreements and damages of $26,000,000 per month. PDTI counterclaimed for declaratory relief under the same agreements. On April 19, 2006, CFLP filed a motion for summary judgment; PDTI then cross-motioned for summary judgment.

The district court granted PDTI's motion for summary judgment by memorandum opinion and order on June 15, 2006. On July 26, 2006, the district court entered a final judgment for PDTI and granted its motion for attorneys' fees in the amount of $26,525. The district court's order adjudged that: CFLP take nothing on its claim for damages; PDTI recover all taxable costs from CFLP; after February, 17, 2006, CFLP has no license to improvements made by PDTI whenever they were made; PDTI had no further obligation to share or disclose information with CFLP that was not in the public domain, unless it was required to do so by the license agreement as amended by the Settlement Agreement; and PDTI was to recover attorneys' fees and expenses. CFLP filed a timely appeal from the district court's ruling.

DISCUSSION

## I. Jurisdiction

The district court's jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## II. Contract Interpretation

### A. Standard of Review

We review de novo the district court's instant ruling granting summary judgment because contractual interpretation is a purely legal issue. Gonzales v. Denning, 394 F.3d 388, 392 (5th Cir. 2004).

### B. Interpreting Unnumbered Paragraph Five

Paragraph seven of the Settlement Agreement states that the contract shall be construed under Texas law. Under Texas law, if a contract is worded so that it can be given a definite legal meaning, it is not ambiguous and its construction is a matter of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). The interpretation of a contract must be decided by looking at the document "as a whole in light of the circumstances present when the contract was entered." Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). A contract is considered from its entire context and all provisions are given effect "so that none will be rendered meaningless." Coker, 650 S.W.2d at 393.

The paragraph at the center of this dispute, unnumbered paragraph five of Section One of the Settlement Agreement ("the Paragraph"), reads as follows:

> "Particle Drilling Technologies, Inc. and Curlett Family Limited Partnership, Ltd. hereby amend the Exclusive License Agreement between them dated June 1, 2003, to remove Sections 3.1, 3.2, 3.3, 3.4, 3.5, 3.6, 5.1 and 5.2 therefrom (Sentence One). These deletions shall not eliminate Particle's obligation to provide documents and information which is in the public domain to CFLP (Sentence Two). It is the limited intention of the parties that, by such deletions, there will be no further sharing of information regarding

improvements and other information among them as except as set forth herein (Sentence Three). It is not the intent of the parties, by such deletions, that the parties surrender or give up, and the parties do not surrender or give up, their license rights in and to improvements of the Licensed Patents through the date of closing hereof, February 17, 2006 (Sentence Four). Thereafter, neither party shall have license rights in and to the other party's improvements of the Licensed Patents (Sentence Five). The parties shall amend the exclusive License Agreement to reflect these amendments within thirty (30) days from February 8, 2006 (Sentence Six)."[3]

Below, CFLP and PDTI each argued that theirs was the only reasonable and unambiguous interpretation of the Settlement Agreement. Under both CFLP's and PDTI's interpretation of the Paragraph, neither party has a right to improvements made by the other party to the PID Technology after the closing date of the Settlement Agreement, February 17, 2006. The question presented in this case is whether the Paragraph terminates license rights to improvements created prior to February 17, 2006. The district court accepted PDTI's interpretation, which, on the closing date, terminates license rights to all improvements created by the other party. CFLP believes that the Settlement Agreement preserves license rights to improvements created by the other party before the closing date. This question is addressed by Sentences Four and Five of the Paragraph.

Sentence Four states that: "It is not the intent of the parties, by such deletions, that the parties surrender or give up . . . their license rights in and to improvements of the Licensed Patents through the date of closing . . . ." This sentence means that the deletion of Sections 5.1 and 5.2 did not surrender the parties' rights to improvements. If and when the parties were to surrender their rights to improvements turns of the interpretation of the clause, "through the

---

[3] Sentence designations are added for ease of reference.

date of the closing."[4]  CFLP argues that "through the date of closing," modifies the phrase, "improvements of the Licensed Patents," rather than the phrase, "do not surrender or give up their license rights."  The effect of this interpretation would be that the parties would never surrender license rights to improvements made on or before the date of closing. Under the district court's interpretation of the Settlement Agreement, the clause, "through the date of the closing," modified the phrase, "do not surrender or give up their license rights."[5] The effect of this interpretation would be that the license rights to improvements are not given up until the closing date.[6]

CFLP's interpretation has some force if the sentence is read in isolation. However, when interpreting a contract, we must look at the document as a whole.  See Columbia Gas Transmission Corp., 940 S.W.2d at 589. In order to interpret the Settlement Agreement as CFLP urges, we would have to view Sentence Four as creating a distinction between improvements created "through the date of closing" and improvements created after that date.  The former would be protected by Sentence Four and the later presumably would be extinguished by Sentence Five.  Sentence Five, however, does not recognize any distinction between improvements.  Sentence Five states that after the closing date, "neither party will have license rights in and to the other party's improvements."

---

[4] When used in relation to a specific date, "through" is defined as follows: "[U]p to and including: The play runs through May."  AMERICAN HERITA GE DICTIONARY 1413 (3d ed. 1997).

[5] The district court adopted this interpretation of the Paragraph when it granted PDTI's cross motion for summary judgment, which advocated this reading of the Settlement Agreement.

[6] Although page seven of the district court's opinion contains language suggesting that the Settlement Agreement terminated CFLP's entire license to the PID Technology, we believe that this wording was an unintentional misstatement. The district court's order makes it clear that, under its reading of the Settlement Agreement, only the license rights to improvements were terminated, so we do not rule that the district court adjudicated anything beyond its order.

There is no qualifying term limiting this surrender of license rights only to those improvements created after the closing date or excepting those improvements made up to and including the closing date. Therefore, we will not read such a distinction into the Settlement Agreement.

Comparing how Sentences Four and Five modify the improvements sharing obligation with how Sentences Three and Four modify the disclosure obligation also supports PDTI's contention that Sentence Five completely terminates license rights to improvements after February 17, 2006. Sentence Two requires that PDTI continue to provide CFLP with documents and information that are in the public domain even though the deletion of Section 3 terminated its other disclosure obligations. Sentence Three reinforces this point by stating that the deletion of Section 3 means that there will no longer be an obligation for the parties to share information, "except as set forth herein" (referencing Sentence Two's requirement to disclose public information).

Contrast this with Sentences Four and Five. Under CFLP's interpretation, Sentence Four preserves the limited right to continue using improvements made on or before the closing date. This is analogous to Sentence Two's retention of PDTI's obligation to share public information with CFLP. Sentence Five then states that after the closing date neither party has a license to the improvements made by the other party. This is analogous to Sentence Three's termination of the obligation to share information. Sentence Five, however, does not have language indicating that the termination of the parties' license rights to improvements is limited by an exception created in Sentence Four. If Sentence Four was meant to carve out an exception to the general termination of the parties' license rights to improvements, the drafters likely would have included language recognizing the exception as they did in Sentence Three. The absence of language recognizing an exception indicates that CFLP's interpretation of the Paragraph is incorrect. Additionally, the absence of such

8

qualifying language supports the district court's interpretation of the Paragraph because under its interpretation, Sentence Four only maintains license rights to improvements until the closing date. Consequently, there was no need for qualifying language in Sentence Five because after the closing date the license rights to all past, present, and future improvements were terminated.

Finally, CFLP's interpretation of Sentence Five would render it meaningless. Sentence One deleted Sections 5.1 and 5.2 from the License Agreement; those sections provided reciprocal license rights to any improvements to the PID Technology made by the other party. Once Sentence One deleted these sections from the Licensing Agreement there were no future rights to improvements. If Sentence Five was only meant to terminate future license rights to improvements, it becomes redundant because the deletion of Sections 5.1 and 5.2 accomplished that. Given the rule of construction that no contract provision should be read to be meaningless, this interpretation of the contract is disfavored. Coker, 650 S.W.2d at 393. The district court's interpretation avoids this redundancy because it reads Sentence Five as terminating all license rights to PID Technology improvements, past, present, and future, which goes further than the deletion of Section 5.1 and 5.2 in Sentence One.[7]

---

[7] CFLP also argues Section 5.1 of the License Agreement automatically designates any improvements to the PID Technology created by PDTI as an Invention and thus a part of their license. If this were the case, no license rights to improvements created before the closing date can be taken away because they are part of CFLP's license under Section 2. We disagree with CFLP's interpretation of that section. The relevant portion of Section 5.1 of the License Agreement reads as follows:

"PRODRIL ACQUISITION COMPANY shall retain all rights and title in any such improvements including the right to file patent applications therefor and have letters patent issued in its own name in all countries; provided, however, any new inventions resulting from such improvements shall automatically constitute, and be treated as, an Invention for purposes of this Agreement, effective as of the date of inception of such improvements, and any patent application and patent issued therefor embodying in any of its claims such

For the foregoing reasons, we believe that the district court's interpretation of the Settlement Agreement is the only reasonable interpretation, and we affirm its grant of PDTI's motion for summary judgment.

C.      Was the District Court's Interpretation of the Contract Unreasonable?

Having concluded that the contested paragraph unambiguously terminates both parties' license rights to all improvements to the PID Technology, we now turn to CFLP's contention that this interpretation is unreasonable.

Under Texas law, an agreement must be interpreted reasonably according to the intention of the parties at the time it was entered.  Portland Gasoline Co. v. Superior Mktg. Co., 243 S.W.2d 823, 824 (Tex. 1951).  "The primary goal is to ascertain and give effect to the parties' intent as expressed in the contract."  Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 423 (Tex. 2000).

CFLP asserts that it is unreasonable to believe that it would have intended to give up its rights to the improvements PDTI made to the PID Technology before February 17, 2006. An unstated, underlying premise of this argument is that there actually were improvements to the PID Technology

---

improvements shall automatically constitute, and be treated as, a [sic] Licensed Patents, effective as of the date of filing of such patent application, without the necessity for amendment of this Agreement."

The term Invention is defined as follows: "'Inventions' means the inventions embodied in the Licensed Patents and two (2) invention disclosures for 'Injector Systems' and 'PID Drill Bit (Nozzle only)' assigned to PRODRIL ACQUISITION COMPANY under the Assignment and Assumption Agreement."

This paragraph says that "any new inventions resulting from such improvements shall automatically constitute . . . an Invention . . . ."  However, the word "inventions" is never defined in the contract, and the defined term "Inventions" does not help determine which improvements should be "inventions."  When an improvement becomes an "invention" is critical because only those improvements that are "inventions" automatically become an "Invention" and thus a part of CFLP's license.  Therefore, the plain language of 5.1 does not support CFLP's assertion that all improvements are "inventions," so we reject its argument that all improvements made by PDTI on or before the closing date are a part of CFLP's license under Section 2.

10

created after June 1, 2003 by PDTI before February 17, 2006 that CFLP knew about and was using or intended to use. If there are no such improvements, then interpreting the Settlement Agreement as terminating all license rights to improvements made up to February 17, 2006 would not be unreasonable because it would only require CFLP to give up something it did not have to begin with. The record does not contain any allegations (or any summary judgment evidence) that CFLP uses any improvements made by PDTI to the PID Technology in its business or that it has ever even been made aware that any such post June 1, 2003 improvements existed on or before February 17, 2006.[8] In the damages portion of its complaint, CFLP does not calculate damages based on the revenue it would lose if it were required to surrender its license rights to improvements. CFLP calculated damages by estimating the loss it would incur if one of its geothermal wells were delayed in getting into production, but CFLP has not alleged that any shutdown would be caused by its inability to use improvements made by PDTI to the PID Technology after June 1, 2003 and on or before the closing date.

Additionally, CFLP's assertion that the Settlement Agreement allows it to retain license rights to any improvements made by PDTI on or before the closing date is inconsistent with the fact that it gave up any claims for damages that it would have had against PDTI for prior violations of its rights under License Agreement. By signing the Settlement Agreement, CFLP pledged to surrender any and all claims it asserted or could have asserted against PDTI under the License Agreement up to February 17, 2006.[9] So while CFLP claims

---

[8] CFLP filed an injunction in this case trying to stop PDTI from publicly disclosing information about improvements made to the drill bit, the shot trap, and the new injector system, but it never alleged that these improvements were created on or before the closing date.

[9] On February 17, 2006, the state court ordered that "all claims asserted or that could have been asserted by Harry B. Curlett, Deep Heat Energy Corporation, Curlett Family

that the Settlement Agreement retained its license rights to PDTI's improvements made after June 1, 2003 and on or before February 17, 2006, it had, because of the February 17, 2006 state court order, lost its ability to sue for damages if PDTI did not comply or had not complied with that directive.[10]

For these reasons, we conclude that the district court's interpretation of the paragraph is the more natural reading of it and that it is the most reasonable reflection of the parties' objective intent. Therefore, we hold that the district court's grant of summary judgment to PDTI should be affirmed.[11]

## III. Ambiguity

Additionally, CFLP briefly argues, for the first time on this appeal, that even if the district court's construction was the most reasonable, summary judgment was improper because the meaning of the Paragraph is ambiguous.

Under our decisions, an argument not raised before the district court cannot be asserted for the first time on appeal. Stokes v. Emerson Elec. Co., 217 F.3d 353, 358 n.19 (5th Cir. 2000). In order to preserve an argument for appeal, the argument "must be raised to such a degree that the trial court may rule on

---

Limited Partnership, Ltd., and CCore Technology and Licensing, Ltd., jointly and severally, against Particle Drilling Technologies, Inc. are DISMISSED WITH PREJUDICE, with each party bearing its own costs and attorney's fees." Particle Drilling Technologies, Inc. v. Curlett, No. 2004-63506 (333rd Dist. Ct., Harris County, Tex. Feb. 17, 2006).

[10] CFLP also claims that the district court erred in interpreting the Settlement Agreement because it is unreasonable to think that it intended to amend the License Agreement simply "to preserve a meaningless right that would, by then, have expired." But it is not unreasonable to believe that the parties would have wanted to amend the License Agreement to create on fully integrated document describing the parties' relationship.

[11] We note in passing that the district court's statement in its June 15, 2006 opinion that after February 17, 2006 "the parties manifested an intent to relinquish any previously existing rights to the use of the PID Technology and its improvements" (emphasis added) – citing the language in Sentence Five that "[t]hereafter, neither party shall have license rights in and to the other party's improvements of the Licensed Patents" – appears to be an inadvertent error insofar as it includes "PID Technology" rather than simply "improvements" thereto. We note the July 26, 2006 final judgment does not include this apparently inadvertent overbreadth in the language of the June 15 opinion. It is the judgment that controls in this respect.

it." Matter of Fairchild Aircraft Corp., 6 F.3d 1119, 1128 (5th Cir. 1993). See also O'Kehie v. Harris Leasing Co., 80 S.W.3d 316, 319 (Tex. App.—Texarkana 2002, no pet.) ("Generally, one seeking to establish ambiguity in a written contract must plead it.") (citing Crozier v. Horne Children Maint. & Educ. Trust, 597 S.W.2d 418 (Tex. Civ. App.—San Antonio 1980, writ ref'd n.r.e.)).

After a thorough review of the record, we have not found, nor has CFLP brought to our attention,[12] any indication that CFLP in anyway raised this argument in the district court in any of its pleadings or at any hearing or otherwise.[13] Nor has CFLP identified any dispute about underlying facts or the intent of the parties that would present a fact issue to be submitted to a jury if we were to hold that the contract was ambiguous. See Constitution State Ins. Co. v. Iso–Tex Inc., 61 F.3d 405, 409 (5th Cir. 1995) (affirming summary judgment where an appellant "failed to produce any evidence of a patent or latent ambiguity"). Since the argument that the contract was ambiguous was not raised below and CFLP presented no summary judgment evidence showing ambiguity, it may not assert ambiguity now for the first time on appeal and seek an evidentiary trial to determine the meaning of the relevant document which both parties had submitted to the district court for summary judgment decision

---

[12] Instead CFLP's reply brief cites a case from the D.C. Circuit to support the proposition that if both parties argue that they present a reasonable interpretation of the contract, ambiguity need not be raised. In that case, however, the district court held that the contract was ambiguous and that the appellant need not have argued that the sentence was unambiguous below in order to raise that argument on appeal, therefore it is inapplicable to this case. KiSKA Const. Corp. v. Wash. Metro. Area Transit Auth., 321 F.3d 1151, 1163 n.15 (D.C. Cir. 2003).

[13] In CFLP's response to PDTI's cross-motion for summary judgment, CFLP's sole argument was that the contract was not ambiguous and that its interpretation was the only reasonable one. Under Texas law, however, a contract is not ambiguous merely because two parties offer different interpretations. DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999).

without even any hint that a full evidentiary trial was desired or that there were any disputed issues of fact to resolve.

IV.   Attorneys' Fees Award

A.   Standard of Review

We review a district court's grant of attorneys' fees for abuse of discretion. DP Solutions, Inc. v. Rollins, Inc., 353 F.3d 421, 433 (5th Cir. 2003).

B.   Basis for Attorneys' Fees

As this is a diversity suit and the granting of attorneys' fees is a matter of substantive law, we look to Texas substantive law to determine whether there was a basis for awarding fees.  Id.  Under Texas law, a party is entitled to attorneys' fees if permitted by statute or contract.  Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999) (per curiam).

The district court order did not specify on what basis it awarded attorneys' fees.  PDTI, however, concedes that there is no Texas statute that permits it to recover attorneys' fees,[14] so we will focus our analysis on whether attorneys' fees are authorized by contract.

The portion of the Settlement Agreement that allegedly authorizes attorneys' fees to be awarded, numbered paragraph six, reads as follows: "Conversely, if the subsequent mediation is unsuccessful, then the prevailing party or parties in the subsequent litigation shall be entitled to recover, as

---

[14] PDTI would not be entitled to attorneys' fees under TEX. CIV. PRAC. & REM. CODE § 38.001 because it did not recover damages for breach of contract.  Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 201 (Tex. 2004).  PDTI also may not be awarded fees in federal court under the Texas Declaratory Judgment Act. Utica Lloyd's of Texas v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998) (holding that a party may not recover attorneys' fees under the Texas Declaratory Judgment Act in a diversity case because the statute is procedural, not substantive).

14

allowed by law or contract, reasonable attorneys' fees and expenses, including the cost of the unsuccessful mediation."[15]

The literal reading of the clause, "as allowed by law or contract," is that the recovery of attorneys' fees is permitted on the condition that some law or contract authorizes such fees. PDTI argues that this literal reading of the paragraph would render it meaningless because if the recovery of fees were authorized by another contract, there would be no need to mention it in the Settlement Agreement. We disagree. Any grant of fees in the License Agreement would have only covered disputes arising from that agreement. The Settlement Agreement was a freestanding agreement, which, given the history of the parties' relationship, could also have become the subject of litigation. The language in the Settlement Agreement had meaning because it extended any authorization of attorneys' fees bargained for in the License Agreement to any disputes regarding the Settlement Agreement. The fact that attorneys' fees were not authorized in the License Agreement does not undercut this argument because language regarding fees in the Settlement Agreement was likely meant to preserve the status quo on fees. In this situation, the status quo was that no attorneys' fees were to be awarded. Additionally, if the parties wanted this to be an affirmative authorization to recover attorneys' fees they could have easily done so by leaving out the qualifying clause, "as allowed by law or contract."

The language of the Settlement Agreement does not authorize PDTI to recover attorneys' fees. Since there is no other contract between the parties or applicable Texas statute that provides for attorneys' fees, there was no basis for PDTI to recover attorneys' fees under Texas law. Thus, the district court erred by awarding attorneys' fees to PDTI, and its decision in that respect is reversed.

## CONCLUSION

---

[15] The record provides no evidence that any other provision in any contract between the parties authorizes a court to award attorneys' fees.

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED and its award of attorneys' fees is REVERSED.

AFFIRMED in part; REVERSED in part